0816963. Good morning, Your Honor. This is more fun than talking about search warrants. This is going to be definitely a change of direction from what I've heard go on. May it please the court, my name is Frank Schuster and I represent the Hertz Corporation. Absent the court wanting a recitation of the facts or any discussion of particular issues, there are two issues that I would like to address with the court. The first is, I'd like to discuss why the place of operations test is not a reliable indicator for determining the principal place of business for a nationwide consumer-oriented corporation that has substantial operations in many states. Second, I would like to address why under the place of operations test, Hertz does not have a substantial predominance of its business activities in California or any other single state. I'd also like to advise the court that if I could, I would reserve three minutes of time for rebuttal. What you're asking us to find in light of Tosco, if, I mean, Tosco says you don't get to the nerve center until after you do the principal place, correct? Correct, Your Honor. That's the law in this circuit is you look at the principal place of business, you look at the place of operations test first. So are you asking, what you're asking us to do here, is it to go beyond Tosco? I'm asking the court to flesh out what the appropriate approach is to locating a corporation's principal place of business. Tosco did not involve a nationwide retail consumer business like Hertz, Walmart, Starbucks, Target, corporations of that nature. When you look at the facts of Tosco and in assessing where to place a corporation's principal place of business, you have to look at the economic realities of the situation. What is their business? Tosco refined oil. It blended lubricants. It had five refineries in California. It had one refinery in each of three other states, it had four lubricating blending facilities. Two of them were in California. So you want a little bit of a different test for people like, for corporations like Hertz or that, I guess, like Walmart or things like that? Well, I think it's not a different test. It is that the place of operations test does not allow you to reliably set the principal place of business for corporations like that, where you are far flung. And you find this embedded in the Ninth Circuit cases and really in every other case that discusses it, is that where the operations are far flung, nationwide in scope, with substantial activities in many states, you can't reliably say, this is the center of business activity. This is the principal place of business. With Tosco, they refined oil. They blended lubricants. Five of their facilities were in California. Well, since, assuming that there are other corporations like Hertz that do business along these lines, it would seem to me that whatever we decide, maybe this would warrant publishing, just because I'm sort of looking at this from the standpoint, when it started in state court, you removed it to federal court. Then you got, that you went back to state court. Now you appealed that, because under CAFCA, and now it's at the Ninth Circuit. You bounced around on it. And no one's started the trial yet, right? We're in discovery, and we have quite a ways to go before we get there. So, everyone needs to know, you know, they need to know whether this is going to work or not. It would be good to know the court that we are ultimately going to complete the litigation of this particular matter. Until everyone can get on their way. We're on our way. Discovery-wise, we're on our way. And we will, based on the plan we've got, we're ten months, easily ten months away from even the class certification. The devil's in the details, though. When you say substantial, you said, well, if you've got substantial business in a number of other states. Or, as we sometimes say, significantly more in one state than another. And if one writes that out, that's going to give us a great deal of direction, isn't it? It would be terrific for pragmatists. This case looks substantial to me. This looks significant to me. So, you know, isn't that what you kind of... Well, as we've debated it... You want to use the word just like they did. Well, as we've debated it, it's where do you draw the line? You know, is 30 percent versus... where do you start to draw the line? And I think if you start with the numbers first, and I sure hope this does not turn into a math quiz, because that would create a problem for me. But, you know, where do you start to draw the line between what is substantially predominant and what isn't? And I think the better place to start is the principles of law, the rules of law to look at, to apply, to answer this question and try and answer it reliably, and answer it reliably in accordance with the underlying purposes of diversity jurisdiction and what it's intended to do, and with respect in a way that does not in any way interfere with interstate commerce. And when you look at the 58 amendments and the language to it, these are two pretty important principles that we need to be concerned about in coming up with the appropriate rules for fixing a corporation's principal place of business. Is that by way of saying you want to divide population into the other things, or is this before you even get to population? As Tosco and Industrial Tectonics make clear to me, there are these two tests. The Ninth Circuit rule is we're going to look first to the place of operations test unless it doesn't reasonably or reliably fix the principal place of business. And if it doesn't, then we're going to go to the nerve center test. And what I'm suggesting to the court with respect to an opinion that will help all parties in dealing with this, both CAFA and in terms of general diversity, is to start to outline the basic rules for when that principal place of business test does not reliably set the principal place of business for a corporation. I meant to say the place of operations test does not reliably set a corporation's principal place of business. You were saying in the briefs, I believe, that under a per capita type test, that maybe Florida had the greater context. Now, are you saying Florida would be the place of operation, or are you going to have your case in Park Ridge, New Jersey? You're saying it's the nerve center test. The principal place of business for the Hertz Corporation should be. It's the nerve center from which it radiates out to its constituent parts. I didn't make that language up. I like it. It comes from other cases. But that's where its principal place of business is. And the same should be true for other corporations that are engaged in these far-flung activities. I venture to guess that any judge in the state of California, if you say to him, he's going to think nationwide retailer, or any potential juror. They're going to think nationwide retailer. They're going to think of it as Starbucks. They're going to think of it as Target. All of those corporations, they are going to perceive not as a local business. They perceive them as nationwide businesses. And they may even perceive them as a Georgia corporation, an Arkansas corporation, not a local corporation. Well, to the extent the appellees are arguing, the purpose of diversity jurisdiction is to prevent an unfairness, the home court advantage that would be unfair to the outside corporation. And they say that couldn't possibly be the case for Hertz because Hertz is well-known and very evident in California. Now, if you're interpreting our principal place of business test, 1332D, under that analysis, what are the purposes of the legislation? Why shouldn't that argument prevail? Several reasons. One, I'm having a little difficulty grasping the concern that the court's expressing. But if you look at it as the court does under the principal place or the place of operations test, with the purposes of diversity in mind, we have greater contact with the citizens of Florida. And I think the last question or two questions ago was, do we set it in Florida? Absolutely not. You can only have one principal place of business. It can't be California and Florida and New Jersey. And that's where this math issue starts breaking down. You can't just turn this into, let's count up how many employees and locations and facilities and revenues you have, with a corporation that has $4.3 billion in revenue, $800 million from California, $500 million from Florida, $300 million in Texas and $200 million from New York and Illinois. Those are substantial numbers to me. And they still only come to $2 billion of a $4.3 billion far-flung enterprise. To say that California is the center of Hertz's business activity, it is its principal place of business, it is the place where it conducts the most, the bulk, and those are the words you see peppered through the cases. It doesn't. It's just a reflection of the business we have, its nationwide scope, and that California is the most populous state in the union. If we accept your argument, then, no, if we don't accept your argument and say that California is, that we affirm the court here, and are you subject to having more than one principal place of business? I think I have a heck of a time trying to convince a state court judge in New Jersey that, or a federal judge in New Jersey where Hertz sues and claims diversity of citizenship, that we are actually a citizen of the state of California. I think Walmart would have a heck of a time convincing a federal district court judge in Arkansas that there's diversity jurisdiction and they should be allowed to sue in federal court in Arkansas because their principal place of business is Texas, where they actually have more stores based on their most recent 10K than they do in California. But that's just saying that the other courts won't be brilliant enough to follow the brilliant decision that we make here, that indeed the principal place is California. And if the other judges are doing their job right and getting to the right answer as we did, they'll all say the same thing, you know, that's right, principal place is California. They might, Your Honor. They might not, but that just means they're wrong. They might not, and I think it could lead to anomalous results of the example that I just gave. That's always true in the federal system until the U.S. Supreme Court steps in and says, look, dummy, to one court or the other, you got it wrong. I'm sure they wouldn't say it that way, but until the court would resolve the dispute, you're correct. Some of your opinions practically say that, but that's another question. All I'm really saying is what you're talking about, the anomaly, is just always a problem when you have a federal system with different circuits and different states and such. But in this circumstance, the anomalies actually are more a reflection of what the underlying constitutional problems are, the underlying issues that drive this argument that I'm making, which is you have to look at the economic realities of any business. I have no quarrel with Tosco. I don't think Tosco was wrongly decided. I don't think industrial tectonics was wrongly decided. I think the application, the rigid application, when there are these two tests to apply and all the Ninth Circuit case law and virtually the case law from every other circuit recognizes that where you have far-flung operations with substantial operations in many states, the states, the most reliable indicator of a principal place of business in all likelihood, in all likelihood, is going to be the nerve center. Now, there could still be, I think, courts are loath for bright-line rules, and I think that's what the court was attempting to do in industrial tectonics, where they made it clear that here there's a majority of the business in California, and they then set out their predominance test. And they make it clear that it doesn't require a majority, and nor am I suggesting that a majority is the mathematical standard for making the determination. You could have situations, a regional corporation. Again, looking at the economic realities of the situation, a corporation that has operations in five states that was originally founded in California, but because they don't like California jurisdictions, puts its administrative and corporate headquarters in a different state. But they have 40% of their operations in California, and maybe 10% in five other states, or 45% in California. One more three minutes. Do you want to reserve? I do, Your Honor. Thank you very much. Good morning. Good morning, Your Honor. Defendant does want... Do you want to tell us your name? I'm sorry, Your Honor. Joshua Konecki for Appellas and Plaintiffs. Thank you. Defendant does want this court to extend beyond Tosco. And to show why, let's just start with first principles of what Tosco and the Ninth Circuit precedent already says. The question is whether Hertz has met its heavy burden as the party seeking removal, to show that it does not have significantly more activity in this state than other states. And the other part of it, which Judge Bakuda alluded to earlier, is has Hertz shown that it would suffer any prejudice as an outsider if it had to answer allegations of violations of state law in state court. And Hertz has not demonstrated a shred of evidence or a shred of argument of any kind that it would be subject to any kind of local prejudice by appearing in California court. Hertz does substantial business in this state. Significantly greater business than in any other state. Why do you say significantly greater? That's a problem I have with this whole percentage game. Why do you say it's significantly greater? Based on the declaration that Hertz has submitted. Well, I know what the statistics are. Why do you say that's significant? We're talking about a lousy 7 or 8 percent. Why is that significantly greater in the big picture? I think you're talking about, as Judge Chesney articulated in her order, business in California on the Tosco factors, on all of the Tosco factors, of between 40 and 70 percent more in California than in the other states. Okay, so let's try this then. If we apply what I think your principle is. You've got a corporation like Hertz. It's not Hertz, but it's like Hertz. And it operates in all 50 states. 50 states it operates in. And in 96 of those states, in 46 of those states, it has 2 percent of its business. In one of the states it has about 1 percent. And in the last one it has 3 percent. I might not have the percentage exactly right. But 3 percent is what it has in California. In most other states it has 2 percent. That's 50 percent more than most other states. On your theory, that would mean that California is the principal place of business. Is that right? Not quite, Your Honor. I think this case presents a different set of facts because we're not talking about 2 or 3 percent. I mean, when you look at cases like the whole case, I'm talking about your principle. You said percentage is everything. Your Honor. I'm trying to talk about your principle. Percentage is one thing. But because Hertz, for example, has 6.2 percent more of its employees than in Florida, which the judge calculates to be a 43 percent difference, ergo that indicates that Hertz has its principal place of business in California. I've given you a 50 percent case. 50 percent more. I think it's one factor that indicates along with everything else in this case. Well, then we take all the other factors and do the percentages the same way. I'm giving you 50 percent more. I'm just asking on your theory. On your theory, if it's 2 percent in most of the states, 1 percent in one state and 3 percent in California, California is the principal place of business. Is that right? On my theory that I'm trying to present here, no. The theory I'm trying to present here, Your Honor, is that the fact that you have significant, that's one piece of it. There's significantly greater activity in California than in the other states. But there's other pieces to it. I just told you significantly greater. I'm saying that that's one of several pieces. In your example, we're talking about 2 or 3 percent. Here we're talking about California having 17 to 20 percent of its activity here. No, no, no. You mean total. Total. So I think it's a different situation. But if Florida had the same number of percentage as California, then what would you say? If Florida had the same? Then I could not say. 20.5 percent of the employees are in Florida. 18.6 percent of the revenue is in Florida. 18.2 percent of the rental transactions are in Florida. Suppose I said that. Then where are you going to put the principal place of business? Then I'd probably put the principal place of business in the nerve center. But that's not the case that we have here. So as long as there are at least two comparable states, then it goes to the nerve center, is that correct, on your theory? Depending upon the meaning, I don't want to sort of argue about comparable. Your Honor, if I can't... As long as you have two states that have exactly the same percentage. If two states have exactly the same, then we'd have a different case, and I wouldn't be arguing that the principal place of business was in California. But that's not the case we have here. No, it's got 7 percent more. We have a situation where California, number one, has a significant, or hurts, has a significant amount of activity in California, 17 to 20 percent, on all tactical factors. In addition, it's significantly greater than the next highest state, Florida. And we've gone through all the numbers. But 7 percent is what you mean, right? It's 7 percent more than Florida. I've been looking at it in terms of between 40 and 70 percent increase. So that, for example, the tangible property in California, 17 percent versus 9.7 in Florida, would be about 75 percent more in California than in Florida. Well, I guess maybe you wouldn't have made the same argument, but I believe that lawyers will make... I mean, in terms of if you're asking us to come up with a bright line, then if the thing is, if it's exactly even, then we go to the nerve center. Appellants want to be in federal court because you have to have a unanimous verdict, right? And you want to be in state court because you don't have to be, right? Well, we want to be in state court because it's state law. And child judges will be fighting over, well, then judges are going to have to fight over, was it 18.1 or was it 18.2, and you'll have this whole statistical warfare. So I think what Judge Fernandez is getting at, what you're asking us to say, what is significant and then what guidance can we give to the courts so that lawyers don't make judges entirely torture them for years on end before we decide where a court's even just going to get... We're talking about getting to trial, getting a forum. And we're frustrated that a year from now we're still in the beginning of discovery. I don't even think we're as far along as defense counsel is stating. But I don't think we can say... This is important. This is important. But at the same time, I don't know that we can say there's this bright line rule where you come to a certain percentage. What we can say, though, is that, and I want to go back to first principles on this, the burden is on the defendant. And all doubts about federal jurisdiction, whether it's pre-CAFA or post-CAFA, get resolved against the defendant. And at the most, this case presents a close case. And while you can't have a bright line rule necessarily that says one percentage is better than the other, this is certainly a case where compared to the whole case where you have 9% or less activity in California and the others that the defendant has cited, there's significant activity in California and if the concept that the defendant has the burden to demonstrate removal jurisdiction, that any doubt needs to be resolved against federal jurisdiction so that we don't clog up the federal docket with all these types of cases so that we fulfill the purposes of diversity of jurisdiction to begin with, then a case like this, a doubt has to be resolved against the defendant. It has to be resolved, you say? Resolved against the parties seeking federal jurisdiction. But you get to that by talking about what some folks would say and would talk about the policy behind it. Will Hertz really be hurt in California, not hurt in California, et cetera, et cetera, et cetera. The real question, the legal question, where is its principal place with them? Does it make sense to say that a corporation scattered around the country like this one is, that its principal place, the main place it does business is California? Does that make sense? And if it doesn't, it's very simple. We just say we go to the nerve center test. I think it does make sense that Hertz's principal place of business is here in California. They're not just scattered around. They've made a deliberate decision to focus, and we don't need to say the majority, but to focus a significant amount of its employees, its resources, its profits in California. I mean, the idea that Hertz, a car rental company who has made this effort to avail itself of California, the car capital of the world, cannot be regarded as a citizen having its principal place of business in California, with respect to defense counsel, I don't think that holds water. I think that just because Hertz has its, or claims in its declaration, which none of the declaration has been subject to cross-examination yet through discovery, so we have that problem, too, in terms of whether we're going to waste time in federal court and then be back here again after more discovery is conducted. But the fact that they might have their nerve center in New Jersey does not at all mean that they can't be regarded as having a principal place of operation in California when they focus their activities here. They asked an interesting question, though. Suppose they're in front of a federal judge in Florida, and he looks at it and he says, Gosh, they've got 11% coming from Florida. In this small state compared to any other state, or compared to California, they've got 14% of their work here. They've put a tremendous amount of money and effort into developing the market in Florida. I think this must be their principal place of business. Well, as we stated in our papers, John, I think that's the wrong test. When you measure the principal place of business and whether there's a substantial predominance of operations, you're looking at, we should be looking at Hertz and whether looking at that company, whether their profits and their investment of employees and their investment of resources is quantitatively larger in California. I just talked about Hertz. It's not a question. And I said. Hertz, I'm talking about Hertz in Florida, in front of a federal judge. And what the judge there, you would expect to say would be, Well, you only have 14% here. You've got 20% in California. That must be your principal place of business, right? To say that California must be your principal place of business. That's what you would expect the judge in. I would expect the judge looking at these facts, whether they were in California or Florida, to say California is the principal place of business. But you can see that this, you know, maybe they're their numbers as opposed to. I mean, one of the things you said, you couldn't check the numbers. So their numbers put more in California than in Florida, as opposed to. But I could envision situations where they get their numbers, you get your numbers. And it reminds me, and it's sort of like whiskeys for drinking, waters for fighting, that people are going to spend all their time fighting over what court they're going to be in. And it isn't going to be, you know, it'll be the, you know, the, whereas if you just say the nerve center, there's not much to fight about. Yeah. However, the precedent in the Ninth Circuit says we don't just say the nerve center. It says the opposite. We go to the place of operations. And so we do have to determine whether or not Hertz has substantial predominance of its operations in California. And here, I think it's simpler than having to fight, because under Hertz's own facts, I think they do. The point is, is that even if this were a close case where there was some doubt, A, it would have to be resolved against Hertz, but B, we would at least need the opportunity at that point to conduct some confirmatory discovery and cross-examination of their facts. I don't think we have to, because I think their facts show that the principal place of business is in California, and that we do need to look at the place of operations under TSCO prior to looking at the nerve center, even though it might make it more difficult for all of us. And so we don't have to debate it out like that, I don't think. You're running out of time, so you probably should wrap it up. Let me just note that I do think there is a significant question as to whether this case is one that's even appropriate for appellate jurisdiction. I understand that Hertz petitions as it's removing pursuant to CAFA, and that it's, under CAFA, it said it had made the $5 million jurisdictional threshold for mounting controversy. But if you look at what the appeal is actually about, the appeal is not about interpreting CAFA. And 1453c1, the appeal provisions of CAFA were focused on allowing for some appeals so that the appellate courts could have an opportunity for a few years to flesh out what CAFA meant. That's not what's going on here. And the Patterson case from the Fifth Circuit that we cited in our briefs, I think makes the point that, I quote, we may review orders of remand for asserted errors in the application of CAFA at 739. At 742, the court goes on to say the application of 1453c1 is therefore limited to the context of CAFA. All right, thank you for your argument. Thank you. A few quick wrap-up points. First, prejudice is assumed under the Constitution. I don't believe my client has a burden of proving prejudice. To the extent it's needed, Your Honor, I've tried cases where I've heard, in closing arguments, counsel make references to that's not the way we do things here. It's not how we do things in this state. In arguments on motions, before they start, I've been referred to as the lawyer from Georgia, despite the fact that I'm actually from Baltimore. It exists. Our Constitution recognizes it, and there was no need to produce any outside or objective evidence of prejudice. There is a local exception rule with respect to CAFA. If plaintiff thought that the local exception rule applied, it was their burden to go ahead and show that to the court and say the local exception rule applies. But even under the local exception rule, the last element of it would still look to the citizenship of the primary and nominal defendants in the case. We cannot escape what's going on here. This is an essential issue about where to locate the principal place of business for corporations in this country when they get sued in this jurisdiction. And California will, unlike any other state because of its size and the need for interstate commerce, I mean, you go where business is. It's one of the marvels of our system. We go where the business is, and we shouldn't be punished because we go where the business is. We want to encourage that. So that's all that's going on, and we've got an essential issue about whether California, because of its size, will be able to opt out of diversity jurisdiction, not just for CAFA in general, with respect to corporations that are nationwide in scope with significant operations in many states where you can't reliably say that's the center of their business. They are a local business. They're recognized as a local business. I don't think anybody recognizes Starbucks as being from someplace other than Seattle or Hertz as being from somewhere back east or Walmart being from Arkansas. That's what's going on, and it should not turn into a numbers game, and especially a numbers game, which we've not addressed at all, and with 30 seconds left may not be the best time to bring it up, but a numbers game that, according to the district court, doesn't even take into account the disproportionate impact of California's size when looking at issues like contact with the citizens of the state. This court should provide guidance. It would not be in conflict with Tosco or Industrial Tectonics. I think both of those decisions were rightly decided under the place of operations test. Neither one involved the situation now before this court where the court can provide guidance with respect to the economic realities of this particular situation without needing to create some sweeping, bright-line rules that apply in all situations, but as to this situation, there is a need for guidance, and I would respectfully request that the court issue it and reverse the decision below and return this case back to where it properly belongs under CAFA in federal court. Thank you for your time. Thank you both for your argument. This matter will now stand submitted. This concludes our calendar for today. We'll be in recess until tomorrow at 9 a.m.
judges: Fernandez, Callahan, Ikuta